**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────

**TRUSTEES OF THE NEW YORK CITY**
**DISTRICT COUNCIL OF CARPENTERS**
**PENSION FUND, WELFARE FUND, ANNUITY**       20-cv-2196 (JGK)
**FUND, AND APPRENTICESHIP, JOURNEYMAN**
**RETRAINING, EDUCATIONAL AND INDUSTRY**      <u>MEMORANDUM OPINION AND</u>
**FUND, ET AL.,**                             <u>ORDER</u>

                          **Petitioners,**

                   **- against -**

**CONCRETE BROTHERS CONSTRUCTION LLC,**

                          **Respondent.**
────────────────────────────────

**JOHN G. KOELTL, District Judge:**

          There are four petitioners in this case: (1) Trustees of
the New York City District Council of Carpenters Pension Fund,
Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman
Retraining, Educational and Industry Fund ("ERISA Funds");
(2) Trustees of the New York City District Council of Carpenters
Relief and Charity Fund ("Charity Fund"); (3) the Carpenter
Contractor Alliance of Metropolitan New York ("CCA Metro,"
together with the ERISA Funds and Charity Fund, "Funds"); and
(4) the New York City District Council of Carpenters (the
"Union") (together with the Funds, the "petitioners"). The
petitioners seek to confirm an arbitration award pursuant to
section 301 of the Labor Management Relations Act of 1947
("LMRA"), as amended, 29 U.S.C. § 185, and move this Court to
confirm the arbitration award, consisting of the principal

                          1

deficiency, interest, liquidated damages, court costs, attorney's fees, and arbitrator's fees.

The Trustees of the ERISA Funds are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act ("ERISA"). Pet. ¶ 4. The Trustees are fiduciaries of the ERISA Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). Id. The Trustees of the Charity Fund are trustees of a charitable organization established under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). Id. at ¶ 5. CCA Metro is a New York not-for-profit corporation. Id. at ¶ 6. The Union is a labor organization that represents employees in an industry affecting commerce within the meaning of Section 501 of the LMRA, 29 U.S.C. § 142, and is the certified bargaining representative for certain employees of the respondent. Id. at ¶ 7. The respondent, Concrete Brothers Construction LLC, is a limited liability company organized under the laws of New Jersey. Id. at ¶ 8. At relevant times, the respondent was an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. Id. The respondent has not opposed the motion. For the following reasons, the petition is **granted.**

2

**I.**

The following uncontested facts are taken from the complaint and evidence submitted in support of the petition.

On or about October 26, 2017, the respondent executed a Memorandum of Agreement with the Union and Vicinity for Dockbuilders Local Union No. 1556 (the "2018 MOA"). Id. at ¶ 9; Pet. Ex. A. The 2018 MOA provides that "[b]y signing this Agreement the Employer agrees to be bound by the terms of the 2007-2012 Independent New Jersey Dockbuilder Agreement (the "Independent Agreement"), the 2014 MOA, and this Agreement, and any CBA integrating these three documents, collectively, the '2016-2019 Independent New Jersey Dockbuilder CBA.'" Id. at ¶ 10; Pet. Ex. A. The Independent Agreement requires the respondent to make contributions to the Funds for all work within the trade and geographical jurisdiction of the Union. Id. at ¶ 11. The Independent Agreement requires the respondent to furnish its books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions. Id. at ¶ 12.

The Independent Agreement binds the respondent to the policies, rules, and regulations adopted by the Funds. Id. at ¶ 13. The Independent Agreement also provides that in the event "any dispute or disagreement arise[s] between the parties

3

hereto, or between the Union and any Employer-member signatory
hereto, concerning any claim arising from payments to the Fund
of principal and/or interest which is allegedly due, either
party may seek arbitration of the dispute before the impartial
arbitrator designated hereunder[.]" Id. at ¶ 15. Additionally,
"[i]n the event that proceedings are instituted before an
arbitrator under this Agreement to collect delinquent
contributions to a Benefit Fund or Funds . . . such arbitrator
shall be empowered to award such interest, liquidated damages,
and/or costs as may be applicable under the Agreement and
Declaration of Trust establishing such Fund(s)." Id. at ¶ 16.
The Trustees of the Funds established a Revised Statement of
Policy for Collection of Employer Contributions (the "Collection
Policy"). Id. at ¶ 14; Pet. Ex. D. The Collection Policy states,

> [i]n the event that an employer refuses to
> permit a payroll review and/or audit upon
> request . . . the Fund Office shall determine
> the estimated amount of the employer's
> delinquent contributions based on the
> assumption that the employer's weekly hours
> subject to contributions for each week of the
> requested audit period are the highest number
> of average hours reported per week for any
> period of four consecutive weeks during the
> audit period.

Id. at ¶ 17.

The Independent Agreement and Collection Policy provide
that, should the Funds be required to arbitrate a dispute or

4

file a lawsuit over unpaid contributions, the Funds shall be entitled to collect, in addition to the delinquent contributions: (1) interest on the unpaid contributions at the prime rate of Citibank plus 2%; (2) an amount equal to the greater of (a) the amount of the interest charges on the unpaid contributions or (b) liquidated damages in the amount of twenty percent (20%) of the unpaid contributions; and (3) reasonable attorney's fees and costs incurred by the Funds in collecting the delinquencies. Id. at ¶ 18.

Pursuant to the Independent Agreement, the petitioners requested an audit of the respondent for the period beginning October 26, 2017, in order to determine whether the respondent had remitted the proper amount of contributions to the Funds. Id. at ¶ 19; Pet. Ex. 5. A dispute arose between the parties when the respondent failed provide its books and records for the purpose of conducting the audit. Id. at ¶ 20. In accordance with the Collection Policy, the Funds determined the respondent owed an estimated principal deficiency of $150,071.19. Id. at ¶ 21. Pursuant to the Independent Agreement's arbitration clause, the petitioners initiated an arbitration before the designated arbitrator, Roger E. Maher. Id. at ¶ 22. The arbitrator provided notice of the hearing, Pet. Ex. E, and a hearing was held on November 7, 2019, although the respondent failed to appear at the hearing. Id. at ¶¶ 22-23; Pet. Ex. F. The arbitrator

rendered his award, in writing, on November 12, 2019. Pet. ¶ 23.
The arbitrator found that the respondent violated the
Independent Agreement when it failed to permit the Funds to
audit its books and records. Id. at ¶ 24. The arbitrator ordered
the respondent to pay the Funds the sum of $195,095.49,
consisting of: (1) the estimated principal deficiency of
$150,071.19, (2) interest of $12,610.06; (3) liquidated damages
of $30,014.24; (4) court costs of $400; (5) attorney's fees of
$1,500; and (6) arbitrator's fees of $500. Id. The arbitrator
also found that interest at the rate of 7.5% will accrue on the
Award from the date of its issuance. Id. at ¶ 25. The
petitioners contend that the respondent has failed to pay any
portion of the Award as of March 11, 2020. Id. at ¶ 26.

    The petitioners seek to confirm the award issued by the
arbitrator. In addition, they ask the Court to approve
(i) attorney's fees totaling $629 and court costs totaling $75
and (ii) post-judgment interest at the federal statutory rate.

**II.**

    A district court's role in reviewing an arbitration award
is extremely limited. United Paperworkers Int'l Union, AFL–CIO
v. Misco, Inc., 484 U.S. 29 (1987); United Steelworkers v.
Enterprise Wheel & Car Corp., 363 U.S. 593 (1960). The Supreme
Court has explained that district courts "are not authorized to
reconsider the merits of an award even though the parties may

allege that the award rests on errors of fact or on misinterpretation of the contract." Misco, 484 U.S. at 36. The Court instructed that "[a]s long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." Id. (quoting United Steelworkers, 363 U.S. at 597). Accordingly, an arbitration award is to be confirmed if there is even a "barely colorable justification" for the decision. United States Steel and Carnegie Pension Fund v. Dickinson, 753 F.2d 250, 252 (2d Cir. 1985); see also Trustees of New York City Dist. Council of Carpenters Pension Fund v. Stop & Work Constr., Inc., No. 17-CV-5693, 2018 WL 324267, at *2 (S.D.N.Y. Jan. 5, 2018).

Despite being served with the petition, the respondent has not responded. After the respondent's original time to oppose the petition had lapsed, the Court extended the respondent's time to respond until April 29, 2020. Dkt. No. 8. The Court stated that if the respondent did not respond by that date, the Court would decide the petition based on the papers that had been submitted by the petitioner. Id. As of the date of this opinion, the respondent has failed to respond to the petition.

The Second Circuit Court of Appeals has explained that a default judgment is generally inappropriate in a proceeding to confirm or vacate an arbitration award because "[a] motion to

confirm or vacate an [arbitration] award is generally accompanied by a record, such as an agreement to arbitrate and the arbitration award decision itself. . . . [T]he petition and accompanying record should [be] treated as akin to a motion for summary judgment based on the movant's submissions." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006).

The standard for granting summary judgment is well established. "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Darnell v. Pineiro, 849 F.3d 17, 22 (2d Cir. 2017). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### III.

In this case, the arbitrator found, based on "substantial and credible evidence," that the respondent violated the Collective Bargaining Agreement ("CBA") by refusing to allow the Funds' auditors to examine its books and records. Pet. Ex. F.

No representative of the respondent appeared at a hearing before the arbitrator held on November 7, 2019. Id. The

respondent did not make any request for an adjournment or an extension of time to appear. Id. Therefore, the arbitrator proceeded to hear the testimony and take evidence on the petitioners' claims. Id. The arbitrator found that the "uncontroverted testimony and evidence" established that the respondent was bound to a CBA with the Union, which took effect on October 26, 2017. Id. The agreement obligated the respondent to make its books and records available for examination by the Funds' auditors to verify that it made all required contributions to the Fringe Benefit Trust Funds maintained by the petitioners. Id.

The respondent refused to have its books and records examined by the auditors. Id. As a result, the Funds commenced arbitration proceedings to hold the respondent liable for unpaid contributions in the estimated amount of $150,071.19 plus interest, liquidated damages, cost of the suit, attorney's fees, and the fee of the arbitrator. Id. The arbitrator concluded that the respondent was obligated to pay these amounts and awarded a total amount of $195,095.49 to the petitioners. Id. Based on the limited review that is appropriate for an unopposed petition to confirm an arbitration award, there is no dispute of material fact and that the arbitrator's award should be confirmed. The respondent owed the amounts sought under the CBA.

**IV.**

The petitioners also ask the Court to approve (i) attorney's fees totaling $629 and court costs totaling $75, arising out of this petition and (ii) post-judgment interest at the statutory rate.

Courts in this district have observed that "courts have routinely awarded attorney's fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." Trustees of New York Dist. Council of Carpenters Pension Fund v. All. Workroom Corp., No. 13-CV-5096, 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013) (quoting Abondolo v. H. & M.S. Meat Corp., No. 07-CV-3870, 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (collecting cases) (internal quotation marks omitted)). Reasonable attorney's fees are calculated according to the lodestar method, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate. See McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006) (per curiam).

In support of the petitioners' claim for attorney's fees for the costs arising out of this petition, the petitioners' counsel submitted a summary of tasks completed and time billed, totaling 3.9 hours of work. Pet. Ex. G. The petitioners' counsel billed $350 per hour for a partner at Virginia & Ambinder, LLP

("V&A") and $120 per hour for legal assistants' work. Id. at
¶ 32-33; Pet. Ex. G. These rates are reasonable given the
prevailing rates in this district. See New York Dist. Council of
Carpenters Pension Fund v. Perimeter Interiors, Inc., 657 F.
Supp. 2d 410, 424 (S.D.N.Y. 2009) (finding $425 per hour for
partner attorney's work to be reasonable); Watkins v. Smith, No.
12-CV-4635, 2015 WL 476867, at *3 (S.D.N.Y. Feb. 5, 2015) ("For
partners, courts generally award rates between $300 and $400 per
hour and sometimes higher rates."); Trustees of New York City
Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity
Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus.
Fund v. M & A Advanced Design Constr. Inc., No. 18-CV-8453, 2019
WL 1386069, at *4 (S.D.N.Y. Mar. 27, 2019) (finding $120 hourly
rate for V&A's legal assistants to be reasonable). Because the
rates billed and time expended on this action by the
petitioners' counsel are reasonable, the Court grants the
petitioners' request for $629 in attorney's fees.

Court costs for service fees are routinely permitted, and
the Court grants the total requested court costs and
disbursements of $75. See New York City & Vicinity Dist. Council
of Carpenters v. Plaza Constr. Grp., Inc., No. 16-CV-1115, 2016
WL 3951187, at *2 (S.D.N.Y. July 19, 2016) (collecting cases).

The petitioners are also entitled to post-judgment interest
on the full amount of the judgment at the rate provided under 28

U.S.C. § 1961(a). See Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.") (citing 28 U.S.C. § 1961(a)).

## CONCLUSION

The Clerk of Court is directed to enter judgment granting the petition to enforce the arbitration award dated November 12, 2019, in the amount of $195.095.49, plus interest from the date of the arbitration award, namely November 12, 2019, accrued at an annual rate of 7.5% until the date of judgment. The Clerk is also directed to enter judgment in favor of the petitioners and against the respondent in the amount of $629 in attorney's fees and $75 in costs. Post-judgment interest on the entire amount of the judgment will accrue from the date of the judgment at the rate provided by 28 U.S.C. § 1961(a). The Clerk is further directed to close this case.

**SO ORDERED.**

**Dated:**     **New York, New York**
              **July 1, 2020**

                                    /s/ John G. Koeltl
                                **John G. Koeltl**
                          **United States District Judge**